ON the Merits.
Plaintiff brought this action to recover damages from the defendant for asserted negligence in having employed an incompetent servant who, it was alleged, threw a large and heavy plank out of the car he was unloading, inflicting a scalp wound upon him (the plaintiff) and also fracturing his thigh, causing great pain and permanent injury. He was confined fifty days in the hospital and he was permanently crippled by the blow.
The appellants’ contention is that the injury complained of was not one for which it could be held responsible; that no act was traced to the Tennessee Coal and Iron Railroad Company, but that the injury complained of was inflicted by an independent contractor for whose negligence the appellant was not responsible.
In support of its defence the appellant averred that it was a shipper in cars of coal to this city to its agent Grote, who in turn contracted with one Seals to unload the cars at one dollar and fifty cents or two dollars and fifty cents a car; that Seals was not controlled in unloading the cars.
It'appears, by the evidence, when the accident occurred, Seals was *1469 unloading coal from a ear for the Jackson brewery on the levee in this city (buyers and consumers of the coal). The plaintiff was passing near the car at the time Seajs, aided by a hand he had employed to help him, was throwing the large and heavy board from the top of the car which, in falling, struck plaintiff. The injury, the evidence shows, was in connection with the work — i. e., the board was thrown off the car in connection with the work which was being done while unloading it. There was a judgment against the appellant for two thousand dollars.

Servant or Independent Contractor.

The first question before us for determination, is whether the person by whose act the injury is charged to have been committed was an independent contractor and not appellant’s servant.
The employer, in this case, unquestionably, ruled the servant, who was an old negro, who owned the shovel with which he unloaded the coal car. He slept in the coal yard and was on the lookout fora job. At times he'unloaded carts for the defendant, for which he was paid by the day. When he unloaded a car load of coal, he was paid for each car load he unloaded. This was, as we appreciate the facts, the only difference between the two; when he unloaded carts he was paid by the day, when he unloaded cars he was paid for each car unloaded by him. Occasionally he employed a hand to help him. If there was delay in unloading cars the defendant would employ additional labor and attend to the unloading.
Prom the facts proven, we judge that the old man could quit when he pleased; the employer on the other hand, could discharge him at will by paying for the work to the moment of the discharge. The laborer, as we understand, was under the authority of a principal, who directed and ruled in all matters relating to the work. A servant is one who, for wages, serves his employer, following his direction in performing the work. A workman by the piece who, by his industry and labor, gives the required shape to the material of his employer, who has no interest in the work and is not under a contract, is a servant, and an ordinary employee; the same is true of a laboring man who works by the job, in unloading a ear of coal under the direction and subject to the control of the employer. His (the laborer’s) task in the case before us was measured by the work required to unload a car of coal instead of by the day.
*1470 The independent contractor, on the other hand, is one who prosecutes an occupation having some independence.
While performing his contract and complying with its terms he is not subject to the rule and control of the employer, who can not interfere save to require the performance as agreed. The relation is one of contract under which the contractor retains same degree of independence, while the laboring man follows the employer’s direction, and is not independent in the sense of the independent contractor’s independence. The issue is whether this man was a laboring man, as such a servant, or an independent contractor; whether he was accountable directly to his employer, or holding an independent occupation? We must, under the definition of servant and of independent contractor, conclude that he was a servant serving for wages.
Were it different every workman working by the piece in every shop and factory or elsewhere for an employer would be an independent contractor, although he is not more independent or not more free from the control and direction of his employer than the most ordinary day laborer.
The test is found, said this court in Shea vs. Reems, 36 An. 967, in the question whether one person “has placed himself under the direction and control of another in such manner as to confer upon the latter the power of discharge for disobedience.”
Servants, says the Code, are those “who let, hire or engage their services to another in this State, to be employed therein at any work, commerce or occupation for the benefit of him who has contracted with them for a certain price or retribution, or upon certain conditions.” Art. 163.
The Rule, Respondat Superior.
It is also the law that a third person injured is entitled to such remedies against the superior as he may have suffex'ed at the hands of his servant while he, the servant, was carrying out the object for which he was employed. Here the servant did not step aside from the employment to commit the act. It was committed in connection with the work. •
“ Masters and employers are answerable for the damages by their servants in the exercise of the functions in which they are employed.” O. 0. 2320.
*1471 Our view of the Code finds expression in the following: “We never apply this rule without a sense of the hardship on the master; but it has been settled on a broad balancing of interest and equities, and judiéis est dieere, non donare, legem.’’’ Shea vs. Reems, 36 An. 969, which we here earnestly reiterate.

Negligence of the Servant.

By the foregoing conclusion we were brought to the last issue here involved: the nature of the act committed and the amount of damages which should be decreed. There was manifest negligence in throwing a heavy board in the open street, without the least regard to the safety of those passing near the car which was being unloaded.
They threw the board without the least warning, and struck the defendant. There would be no end to accidents if such acts were passed unnoticed.

Amount of Damages.

We agree with our learned brother of the District Court in the amount awarded, and we must decline to grant the prayer for an increase of damages. We have been given no good reason to justify us in increasing the amount allowed. It is consistent with our decrees allowing damages. Courts of appeal are not inclined to increase damages unless the amount is manifestly too small.
It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed.
Nicholls, C. J., absent; ill.